IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BILLY SANDS, BOBBY SANDS,
EDNA MARY SANDS, JESSE
SANDS, KATHY SANDS and
PAT SANDS,

          Plaintiffs,

  vs.                                                 CIVIL NO.  02-1417 LFG/KBM

UNITED STATES OF AMERICA,
Department of Interior; GALE NORTON,
Secretary and/or Assistant Secretary of
the Department of Indian Affairs; and
MERLE ELLOTE, former Chief of
Jicarilla Department of Game & Fish;
and JOHN DOES, I and II,

          Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING UNITED STATES' MOTION TO DISMISS

      THIS MATTER is before the Court on the United States' Motion to Dismiss [#11].  The Court considered the motion, response in opposition and the reply.  Oral argument is not necessary.  This matter may be resolved based on the parties' submissions.

### Background

      In 1966, the El Poso Ranch Inc., owner of the famed El Poso Ranch located in northwest New Mexico, was selling ranch acreage as part of a development project.  El Poso Ranch Inc. promised that purchasers and their families would acquire lifetime hunting, fishing and water fowling privileges not only on the lands which they purchased, but on all lands within the exterior boundaries of the El Poso Ranch.

As the El Poso Ranch is located in northern New Mexico's prime hunting, fishing and water fowling areas, Edna and Robert Sands were induced to purchase some acreage and to acquire lifetime hunting, fishing and fowling privileges for themselves and their children. Following their purchase of land, they were given "Lifetime Hunting and Fowling Privilege" cards executed by Robert Katzen, the individual authorized by El Poso Ranch Inc. to grant the privilege.

According to Plaintiffs, the maximum number of lifetime privileges to be given by El Poso, Ranch Inc. to purchasers and their families was no more than 400, and would cover a minimum of 18,000 acres and a maximum of 40,000 acres. Since purchasing their property and acquiring their hunting, fishing and fowling rights, Mr. and Mrs. Sands have hunted, fished and taken water fowl on lands within the exterior boundaries of the El Poso Ranch for more than thirty years. All of the Plaintiffs have utilized the hunting, fishing and fowling privileges which were acquired as a result of the land purchase.

Approximately twelve years after Robert and Edna Sands purchased their property, the Jicarilla Apache Tribe located in northwest New Mexico negotiated for and ultimately purchased the remainder or at least the greater portion of the El Poso Ranch from El Poso Ranch Inc.

In accord with federal law, the Jicarilla Apache Tribe then conveyed this land to the United States to be held in trust for the Tribe. The conveyance to the United States occurred in 1984, and two years later, the Secretary of Interior gave formal notice that the newly acquired lands were now part of the Jicarilla Apache Reservation.

Plaintiffs contend that the 1966 purchase of the property resulted not only in fee ownership of the purchased lands, but also of a hunting, fishing and water fowling covenant over the remainder of the El Poso Ranch property now held in trust by the United States for the benefit of the Jicarilla

Apaches. Plaintiffs contend that when the Tribe purchased the remaining property in 1982, they purchased it subject to the existing hunting, fishing and water fowling covenant and the rights of the Plaintiffs who acquired hunting, fishing and water fowling rights to the land. The Plaintiffs contend that the Tribe's purchase was a subservient estate and subject to the hunting, fishing and water fowling covenant.

The Jicarilla Apache Tribe now closely regulates all activities on the trust lands, including hunting, fishing and water fowling. They sell permits for these activities and manage big-game hunting as a tribal enterprise. They also enforce tribal laws concerning hunting and fishing and cite to the tribal court and/or arrest individuals who hunt, fish or take water fowl on trust lands without proper tribal permits.

In approximately 1998, Robert Sands presented a copy of his hunting, fishing and water fowling card to the Game and Fish Office of the Jicarilla Apache Tribe. Robert Sands wanted to ensure that his card would be honored. He was not advised whether the Tribe contested the card's continued validity.

In February 2000 while hunting within the exterior boundaries of the El Poso Ranch, but on lands now belonging to the Jicarilla Apache Tribe, Robert Sands was arrested by tribal authorities for illegally hunting on tribal property without a tribal permit. He was prosecuted and his hunting equipment confiscated. The Jicarilla Apache Tribe has since advised Robert Sands that his hunting, fishing and water fowling card has no validity. None of the Plaintiffs are now able to avail themselves of the hunting and fishing they previously enjoyed on these lands.

Plaintiffs contend that the Jicarilla Apache Tribe sells elk hunting permits for prices ranging between $4,000 and $10,000. As all the Plaintiffs are now being denied the right to hunt big game,

to fish and to take water fowl on the El Poso Ranch lands, they estimate that each has lost the value of $5,000 a year for the next thirty years. In addition, the Plaintiffs contend that the detrimental effect on the title to their own property is approximately $500,000, and they have suffered other depredations of their property and property rights as a result of actions of tribal officials, officers and employees.

Plaintiffs request that the Court quiet the title to their own property and recognize that each of the Plaintiff's have a lifetime covenant to hunt, fish and to take water fowl, and that the hunting covenants are enforceable on the land held by the United States in trust for the Jicarilla Apache Tribe; that the Court award each of the Plaintiffs compensatory damages for impairment of the Plaintiffs' land and property rights; that the Court award exemplary damages to punish Defendants for violating Plaintiffs' rights; and, finally, that the Court compensate Billy Sands for depredations to his property and reputation.

## Motion to Dismiss

The United States argues that this lawsuit involves two separate matters. The first is Plaintiffs' attempt to quiet title to their own property, including a recognition of their hunting and fishing covenant, so as to allow Plaintiffs the right to hunt, fish and take water fowl on property now owned by the United States, but held in trust for the Jicarilla Apache Tribe. The Plaintiffs argued in their complaint that the United States has an interest in Plaintiffs' property by operation of law, and that interest requires the United States to enforce the Plaintiffs' hunting and fishing covenants as an equitable servitude on the land held in trust for the Jicarilla Apaches.

The United States contends that Plaintiffs' second cause of action arises under the Indian Trade and Intercourse Act of 1834, and involves alleged depredations that the Tribe has committed

4

resulting in monetary damages. As noted above, the Plaintiffs claim damages from the United States in excess of $500,000 for the loss of value to their land and property rights.

## Analysis

The Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491(a)(1)(2000) vests exclusive jurisdiction in the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts, and seeking amounts greater than $10,000. Burkins v. United States, 112 F.3d 444, 449 (10th Cir. 1997); Alamo Navajo School Board, Inc. v. Andrus, 664 F.2d 229, 233 (10th Cir. 1981). Plaintiffs make their claims against the United States which arise out of conduct that comes within the Tucker Act. It is undisputed that Plaintiffs seek damages in excess of $10,000, and, as such, exclusive jurisdiction over those claims is vested in the Court of Federal Claims.

The United States recognizes that if damage claims were less than $10,000, a United States District Court may well have jurisdiction. 28 U.S.C. § 1346(a)(2). However, to dissuade Plaintiffs from seeking to amend their complaint to lower their damage claim, the United States further argues that even an amended complaint under the $10,000 threshold could not vest the District Court with jurisdiction under the claims pled. Specifically, Plaintiffs relied on the 1834 Indian Trade and Intercourse Act *as amended*, 25 U.S.C. § 229, as the basis for their claims. That Act provides no waiver of sovereign immunity from suit, and absent such a waiver, the United States could not be sued. United States v. Sherwood, 312 U.S. 584, 590-91, 61 S. Ct. 767, 771-72 (1941). That precise issue of waiver is not before the Court and need not be decided at this juncture. Suffice to say, that under the Tucker Act, Plaintiffs' one-half million dollar damage claims come within the exclusive jurisdiction of the Court of Federal Claims. Thus, the District Court of New Mexico lacks jurisdiction

to entertain the claim and it must be dismissed without prejudice.

The United States next argues that this Court lacks subject matter jurisdiction over Plaintiffs' quiet title claims. Under the Quiet Title Act, "The United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest . . . . This section does not apply to trust or restricted Indian lands . . . ." 28 U.S.C. § 2409a(a).

Thus, to come within the provisions of the Quiet Title Act, Plaintiffs have the burden of demonstrating that the United States claims an interest in the lands and that the Indian lands exception does not apply. It is undisputed that the land on which the Plaintiffs claim the right to hunt and fish is owned by the United States, but held in trust for the benefit of the Tribe. Jicarilla Apache Tribe v. New Mexico, 742 F. Supp. 1487 (D.N.M. 1990). The United States, however, does not claim any interest in Plaintiffs' land. That property was acquired by Robert and Edna Sands from El Poso Ranch, Inc., presumably in fee. The Jicarilla Apache Tribe never purchased this portion of the El Poso Ranch and makes no claim to it.

Plaintiffs argue that the United States has an interest in Plaintiffs' land, as the covenant that allegedly runs with the title affects the property which the government does indeed own in trust. Even if this were so, and this Court does not so find, Plaintiffs could not establish the second element of their claim.

The gravamen of Plaintiffs' quiet title claim is that Plaintiffs have a covenant to hunt and fish on tribal land. However, the government's waiver of sovereign immunity for quiet title actions does not apply to actions involving "trust or restricted Indian lands." 28 U.S.C. § 2409a(a); United States v. Mottaz, 476 U.S. 834, 842-43, 106 S. Ct. 2224, 2230 (1986); Kansas v. United States, 249 F.3d

1213, 1224 (10th Cir. 2001).

The Plaintiffs find themselves in the proverbial "catch-22" situation. To utilize the Quiet Title Act, Plaintiffs necessarily have to argue that the land they seek to quiet title is *their own land*, and not Indian land. But to show that the government has an "interest" in the Plaintiffs' land, Plaintiffs have to argue that the hunting covenant affects lands held in trust for Indians; and in doing so, the Plaintiffs trigger the exception to the Quiet Title Act.

In United States v. Mottaz, the Supreme Court held that the Indian land exception "operates solely to retain the United States' immunity from suit by third parties challenging the United States' title to land held in trust for Indians." Thus, when the United States claims an interest in real property based on that property's status as trust or restrict Indian lands, the Quiet Title Act does not waive the Government's immunity. Id. at 843.

Such is the situation here. The United States acquired title to these lands, 53 Fed. Reg. 37,356 (Sept. 26, 1988), and now holds these lands in trust for the Jicarilla Apace Tribe. Thus, these are "trust or restricted Indian lands," 28 U.S.C. § 2409a(a), and under the statute, the United States has not waived its immunity from suit. Mottaz at 843.

Plaintiffs therefore find themselves in a quandary. They hold what they claim to be an enforceable, equitable servitude on the land, yet, are unable under the Quiet Title Act to obtain judicial recognition of the covenant. This is so because the United States, as sovereign, cannot be sued unless it so consents. While the United States has consented to be sued under the Quiet Title Act in certain instances, it has expressly withheld its consent when the lawsuit involves actions relating to "trust or restricted Indian lands." 28 U.S.C. § 2409a(a); United States v. Mottaz; Kansas v. United States.

7

In sum, the Court must dismiss the damage and depredation claims due to the exclusivity of jurisdiction in the Court of Claims; the Court must also dismiss the quiet title portion of this lawsuit, finding that the United States has not consented to be sued and, therefore, the Court lacks subject matter jurisdiction.

IT IS SO ORDERED.

                                                      */s/ Lorenzo F. Garcia*
                                                 Lorenzo F. Garcia
                                                 Chief United States Magistrate Judge